UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

MICHAEL O'GRADY,                                    Civil No.: 05-2203 (JNE/JJG)

       Plaintiff,

v.                                                  REPORT AND
                                                    RECOMMENDATION
ROBERT M.A. JOHNSON, DANIEL
KLINT, SYNTHIA O'GRADY, MORT
McBAIN, THOMAS FINLEY, and
SCOTT CORBETT,

       Defendants.
_____

JEANNE J. GRAHAM, United States Magistrate Judge

     The above-entitled matter is before the undersigned Magistrate Judge of the District Court on numerous motions filed by the parties. This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I.     INTRODUCTION

     Before the Court are the following motions by various defendants: (1) Motion to Dismiss by Defendants Finley and Corbett (Doc. No. 4); (2) Motion to Dismiss or in the Alternative for Summary Judgment by Defendants Johnson and Klint (Doc. No. 20); (3) Motion to Dismiss by Defendant McBain (Doc. No. 60); (4) Motion to Dismiss or in the Alternative for Summary Judgment by Defendant Synthia O'Grady (Doc. No. 67); and (5) Motion to Strike by Defendants Finley and Corbett (Doc. No. 51). In addition, Plaintiff has filed the following motions: (1) Motion for Default Judgment Against Defendants Synthia O'Grady and McBain (Doc. No. 12) and (4) Motion for Preliminary Injunction (Doc. No. 80). For the reasons set forth herein, this Court recommends that Plaintiff's Motion for Default Judgement be

denied.  The Court recommends Plaintiff's claims against Defendants McBain, Finley and Corbett be

dismissed for lack of personal jurisdiction.  The Court recommends the second cause of action set forth

in the Complaint, as it relates to Defendants Johnson, Klint and Synthia O'Grady, be dismissed for lack

of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.  The Court recommends the first

cause of action set forth in the Complaint against Defendants Johnson, Klint and O'Grady be dismissed for

failure to state a claim upon which relief can be granted.  Finally, the Court further recommends, Plaintiff's

Motion for Preliminary Injunction and Motion to Strike by Defendants Finley and Corbett be denied as

moot.

## II.        RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This is a *pro se* civil action brought by Plaintiff Michael O'Grady against two attorneys employed

by Anoka County, Minnesota, two attorneys employed by Marathon County, Wisconsin, and the County

Administrator for Marathon County, Wisconsin.  Plaintiff's ex-wife, Synthia O'Grady is also named as a

defendant.  Plaintiff brings this civil rights action under 42 U.S.C. § 1983 for damages and declaratory and

injunctive relief relating to alleged constitutional deprivations and federal and state law violations.

Plaintiff and Defendant Synthia O'Grady were once married, but were divorced in 1997.  The

divorce decree was issued by a judge in Marathon County, Wisconsin.  At the time of the divorce, both

Plaintiff and Synthia O'Grady lived in Wisconsin.  Synthia O'Grady and Defendant Daniel Klint were

married in July 2002, and now reside with Synthia's four sons and daughter in Coon Rapids, Minnesota.

Plaintiff is the biological father of the four boys.  A third party that is not a party to this actions is the

biological father of the girl.

Since the divorce in 1997, Plaintiff has been involved in numerous legal proceedings in Marathon County and Columbia County, Wisconsin, involving child custody issues and the Plaintiff's child support obligations. In 1998, Marathon County, as a "real party in interest" brought a motion to increase Plaintiff's child support obligation. In March 2004, Plaintiff sought relief in the form of a reduction in child support. In October 2003, Plaintiff brought a motion to enforce a physical placement Order. In January 2004, Plaintiff initiated a lawsuit in small claims court against Synthia O'Grady for child support, alleging interference with his summer physical custody with his sons, and seeking child support and other damages. In September 2004, plaintiff filed a private citizen John Doe criminal complaint against Synthia O'Grady accusing her of perjury during a Wisconsin child custody proceeding. In 2005, Plaintiff sought review from the Court of Appeals of Wisconsin on numerous issues relating to the state court child custody and child support hearings and orders. In addition, currently pending is Plaintiff appeal of a Wisconsin Circuit Court Judge's grant of summary judgment to all defendants (Synthia O'Grady, the Marathon County Child Support Agency, a Marathon County attorney and a Marathon County Child Support Agency employee) in lawsuit commenced by Plaintiff in 2004 alleging violations of 42 U.S.C. § 1983, Constitutional Due Process and other federal and state laws. (Marathon County, Wisconsin Case No. 04CV293).

Plaintiff now alleges in the instant federal action that the various defendants violated his Constitutional rights and various federal and state laws when they took actions related to plaintiff's child custody and child support obligations arising out of plaintiff's divorce from defendant Synthia O'Grady. Defendants challenge the jurisdictional, factual and legal basis of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6) and Rule 56.

### III.    DISCUSSION

#### A.    Motion for Default Judgment

Plaintiff seeks an Order of Default Judgment against Defendants McBain and Synthia O'Grady. Plaintiff contends he served a notice of summons and copy of the complaint to McBain and Synthia O'Grady on September 27, 2005, and September 29, 2005, respectively, by certified mail in accordance with Federal Rule of Civil Procedure 4.  Plaintiff has provided photocopies of U.S. Postal Service "green postcards" bearing the residential address of McBain and Synthia O'Grady and the signatures of a Sue McBain and Synthia O'Grady respectively.  Plaintiff argues that he is entitled to a judgment of default against these two defendants under Rule 55 because each of these defendants failed to file an answer or responsive pleading within the allotted twenty days.

A plaintiff commencing an action in the United States District Court for the District of Minnesota may effectively serve a summons and complaint by two methods: either through personal service or through mail service with acknowledgment.  *See* Fed. R. Civ. P. 4(e) (service upon an individual may be effected pursuant to Minnesota law or through personal service); Minn. R. Civ. P. 4.03 (personal service); Minn. R. Civ. P.4.05 (acknowledged mail service).

Plaintiff argues he effectively served McBain and O'Grady through certified mail.  Minn.R.Civ.P. 4.05 allows a plaintiff to obtain personal jurisdiction over a defendant through service by mail so long as the defendant returns the acknowledgment of service form.  The Rule provides:

> In any action service may be made by mailing a copy of the summons and of the complaint (by first class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming to Form 22 and a return envelope, postage prepaid, addressed to the sender.  If acknowledgment of service is not received by the sender within the time defendant is required by these rules to serve an answer, service shall be ineffectual.

4

Minn. R. Civ. P. 4.05.  The advisory committee note that accompanies the rule provides in pertinent part:

> [Minn.R.Civ.P. 4.05] makes service effective if the defendant acknowledges receipt of the summons and complaint. ... If an acknowledgment is not signed and returned, the plaintiff may then serve the summons and complaint by any other means authorized by the rules or by statute. ... The rule retains the provision of its federal counterpart shifting the cost of personal service to a defendant who declines to acknowledge receipt of the summons and complaint by mail. The Committee believes this provision is an essential part of the system for service by mail, and is necessary to discourage defendants from unjustifiedly refusing to acknowledge receipt.

Minn.R.Civ.P. 4.05 advisory committee note (1985) (citation omitted).

Thus, by the plain language of this rule and advisory note, Plaintiff's attempts to effectuate service upon McBain and Synthia O'Grady were ineffectual because neither defendant ever returned the acknowledgment of service forms as required for effective service under the rule.  *See Coons v. St. Paul Companies*, 486 N.W.2d 771, 774 (Minn.App.,1992).  Plaintiff has failed to present evidence that he fully complied with the requirements of Minnesota Rule 4.05 by mailing McBain or Synthia O'Grady a notice and acknowledgment of service and a return envelope addressed to Plaintiff.  The Court finds no evidence in the record that any such acknowledgment forms were returned by McBain or Synthia O'Grady to the Plaintiff.  Consequently, service was not effective.

In the alternative, the Court finds Defendants McBain and O'Grady have sufficiently presented responsive pleadings in this case negating a basis for Plaintiff's motion for default judgment against them.  First, there has been no entry of default under Rule 55(a) in this case, a condition precedent to the entry of default judgement under Rule 55(b).  *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir.1998) (stating that when a party has failed to plead or otherwise defend against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)) (internal quotations and citations omitted).  In addition, both McBain and Synthia O'Grady appeared by counsel

at the hearing before the undersigned on January 19, 2006, and presented objections to Plaintiff's request for default judgment based upon a lack of sufficient service.   The Court notes Defendant McBain's response to Plaintiff's Motion for Default was immediate with McBain filing a memorandum in opposition the very next day.  Synthia O'Grady's did not file any written response to Plaintiff's motion, but presented a credible and good faith defense for her failure to answer at the scheduled hearing.  Given that there is a "judicial preference for adjudication on the merits," *Johnson,* 140 F.3d at 784 (quoting *Oberstar v. F.D.I.C.,* 987 F.2d 494, 504 (8th Cir.1993)), and given the fact that these defendants have subsequently filed  motions to dismiss, to which the Plaintiff has responded, the Court shall construe McBain's written opposition and Synthia O'Grady's oral arguments to include requests for an extension of time to answer or otherwise plead, and those requests shall be granted.  Accordingly, there is no basis for an entry of default against McBain or O'Grady and the Court recommends Plaintiff motion be denied.

### B.     Personal Jurisdiction - Wisconsin Defendants

Plaintiff's Complaint names three defendants who are residents of Wisconsin.  Defendant McBain is the County Administrator for Marathon County, Wisconsin.  Defendants Finley and Corbett are attorneys who were, at all relevant times, employed by the Marathon County Office of Corporation Counsel. During the course of the plaintiff's child custody and support proceedings, these defendants represented the state of Wisconsin, pursuant to statute, on one or more occasions.  Each of the Wisconsin defendants claims this Court lacks personal jurisdiction over him, and that the claims alleged against him must be dismissed.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant.  *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir.1998); *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994).  To

decide whether the plaintiff has made the requisite showing, a court must view the evidence in the light most favorable to the plaintiff. *Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.,* 89 F.3d 519, 522 (8th Cir.1996); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings. *Stevens,* 146 F.3d at 546.

The court must determine whether the exercise of personal jurisdiction over the defendant complies with the state long-arm statute and, if so, whether it comports with due process. *Id.*; *Moog World Trade Corp. v. Bancomer, S.A.,* 90 F.3d 1382, 1384 (8th Cir.1996). Minnesota's long-arm statute, Minn.Stat. § 543.19 (2004), extends jurisdiction over defendants to the extent allowed by due process. *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528 (8th Cir.1991); *In re Minn. Asbestos Litig.,* 552 N.W.2d 242, 246 (Minn.1996). The Court therefore need only consider whether the requirements of due process are satisfied to resolve the jurisdictional challenges. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,* 65 F.3d 1427, 1431 (8th Cir.1995); *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 411 (Minn.1992).

Due process allows a court to exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). The defendant's contacts with the state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). The defendant must act so as

to "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*

Five factors determine whether the exercise of personal jurisdiction over a defendant comports with due process. *See Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir.1996). The factors are: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. *Id.* The last two factors are secondary. *Soo Line R.R.,* 950 F.2d at 529.

The third factor distinguishes general jurisdiction from specific jurisdiction. *Burlington Indus.,* 97 F.3d at 1102. The defendant's maintenance of continuous and systematic contacts with a state may subject it to the state's general jurisdiction, that is, the state may assert personal jurisdiction over the defendant in a suit regardless of where the cause of action arose. *See Wessels,* 65 F.3d at 1432 n. 4. Specific jurisdiction refers to the state's assertion of personal jurisdiction over a defendant in a suit that arises out of or relates to the defendant's contacts with the state. *See id.*

### 1.    Nature, Quality and Quantity of Contacts

To maintain personal jurisdiction over each of the Wisconsin defendants, the Plaintiff must demonstrate that each had contacts with Minnesota, and that those contacts were more than "random," "fortuitous," or "attenuated ." *Bell Paper Box, Inc.*, 53 F.3d at 922 (quoting *Burger King,* 471 U.S. at 475 (citations and internal quotations omitted). Each of the Wisconsin defendants must have purposefully availed himself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*

8

According to the affidavits submitted by the Wisconsin defendants, none of these defendants have ever lived in Minnesota, and none have conducted business in the state of Minnesota.  Defendant Corbett states he applied to the Minnesota state bar 19 years ago, but is not licensed to practice in Minnesota. None of the Wisconsin defendants own or possess property in Minnesota, and all indicate their visits to the state have been few and have only related to personal visits with family and friends, for sporting events, and traveling through the state to other locations.

In response, Plaintiff offers no more than conclusory statements regarding these defendants' business contacts with Minnesota, and has submitted no affidavits or documents specifically supporting his contentions that the affidavits submitted by these defendants contain fraudulent assertions regarding their lack of business contacts with Minnesota.   From the evidence before it, the Court concludes that the nature, quality and quantity of the Wisconsin defendants' contacts with Minnesota do not support a finding of personal jurisdiction over any of the Wisconsin defendants.

### 2.        Relationship of Cause of Action to Contacts

As noted above, the third factor, the relationship of the cause of action to the contacts, requires the Court to considers both "general" and specific" jurisdiction in determining whether it can establish personal jurisdiction over the defendants. Plaintiff's opposition makes several declarations that Finley and Corbett have interests in Minnesota including "Corbett law firm interests; assets and business activities; delivery of goods and legal services; mutual agreement for providing legal services; individual pension investment/ purchase of stock in business; associations in fact with Minnesota resident engaged in economic activity; purchase and/or delivery of office supplies; electronic communication; electronic transaction of goods and services and others."  However, other than through his general assertions and conclusory statements,

plaintiff has failed to submit any affidavits or other evidentiary that specifically support his assertions that defendants Finley and Corbett have any of these interest in Minnesota, or that they have had any "continuous and systematic" contacts with the forum state.

Moreover, even if plaintiff's bald assertions of telephone and electronic communications between Finley and/or Corbett and locations in Minnesota were supported by specific factual evidence, courts have held that contacts such as these are insufficient to support a finding of personal jurisdiction. See *e.g.*, *Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc.,* 747 F.2d 448, 456 (8th Cir. 1984) (contacts limited to telephone and written correspondence are not sufficient to establish personal jurisdiction over non-resident defendant); *Schuck v. Champs Food Sys. Ltd.*, 424 N.W.2d 567, 570 (Minn. Ct. App. 1998)(applying federal law and holding that contacts which included more than eleven correspondence and three telephone conversations, even though related to the cause of action, were insufficient to confer personal jurisdiction); *Maiers Lumber Supply, Inc. v. Chancey Trailers*, 354 N.W.2d 585, 587 (Minn. Ct. App. 1984)(applying federal law and holding that seven-month contract negotiations over the telephone and mail did not support personal jurisdiction even though contracts were related to the cause of action). Significantly, Plaintiff makes no assertions whatsoever that Defendant McBain has had any contacts with Minnesota.

There is simply no evidence in the record to support a finding of "continuous and systematic" contacts with Minnesota by any of the Wisconsin defendants, and thus no basis for this Court to exert general jurisdiction over McBain, Finley or Corbett. Courts have found defendants with more significant contacts than any by the individual Wisconsin defendants nonetheless had insufficient contacts to establish jurisdiction. *See Burlington Industries, Inc. v. Maple Industries, Inc.*, 97 F.3d 1100 (8th Cir.

10

1996)("continuous and systematic" contacts not found in Arkansas despite the fact that Alabama company purchased and sold products in Arkansas, because defendant was not registered to do business there, had no offices, inventory, bank accounts, real estate, personal property, employees, or agents in Arkansas); *Schuck*, 424 N.W.2d at 570; *Maiers Lumber Supply, Inc.*, 354 N.W.2d at 587.

Finally, Corbett and Finley's contacts with the state are completely unrelated to plaintiff's cause of action. Plaintiff has provided no factual evidence that McBain has had contact with Minnesota. The injuries Plaintiff alleges he has suffered all arise from the divorce and child custody proceedings in Wisconsin. Accordingly, there is no evidence in the record to support a finding of specific jurisdiction over McBain, Finley and Corbett in this action.

### 3.      Forum State's Interests and Convenience of Parties

The fourth and fifth factors of the personal jurisdiction analysis, although given less weight, lend further support to the finding of a lack of personal jurisdiction over the Wisconsin defendants. While Minnesota does have a general interest in providing a forum for its residents who have been wronged, *Marquette Nat. Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 295 (Minn. 1978), it has no such interest in providing a forum for litigation brought by a non-resident plaintiff. *Willis v. Willis*, 655 F.2d 1333, 1338 (D.C. Cir. 1981). In this case, the Plaintiff is a Wisconsin resident. Three of the six defendants are also residents of Wisconsin. Under these circumstances, Minnesota's has no more than a minimal interest in providing a forum under these circumstance.

In sum, the Court concludes that the Plaintiff has not met his burden of establishing minium contacts by the Wisconsin defendants, and that the five factors weigh against a finding of personal jurisdiction over Defendants McBain, Finley and Corbett. The Court notes that in his opposition to Defendant McBain's

Motion to Dismiss, Plaintiff seeks time to conduct additional jurisdictional discovery as it relates to McBain. The Court concludes additional discovery would yield little support for Plaintiff's jurisdictional argument and would result in unnecessary burden and expense in light of the minimal contacts attested to in McBain's affidavit. These Wisconsin defendants have not lived or worked in Minnesota. They do not own property in Minnesota. Their visits to Minnesota have been rare, and have been primarily related to personal visits and travel. Based upon this evidence, the Court finds the Wisconsin defendants have not purposefully availed themselves of the privilege of conducting activities in Minnesota thus invoking the benefits and protections of its laws. Accordingly the Court concludes it lacks personal jurisdiction over Defendants McBain, Finley and Corbett, and recommends that Plaintiff Complaint, as it relates to these defendants, should be dismissed without prejudice.[1]

---

[1]     Under the Court's reading of the Complaint, only Plaintiff's third cause of action asserts claims against McBain, Finley and Corbett. Having recommended the dismissal of the claims against these defendants, the Court pauses to note that in the section of the Complaint entitled "Relief for the Third Cause of Action," Plaintiff seeks "a Declaration of rights that the Plaintiff has a concrete individual enforceable right under Title IV-D of the Security Act" in anticipation by the plaintiff of bringing separate legal action against the Wisconsin defendants for compensatory damages and/or punitive damages for their failure to comply with relevant policies and procedures related to the provision of child support service under Title IV-D. *See* Complaint at p. 19, para. 4. The Court construes this paragraph as claim for declaratory judgment and finds the Plaintiff has no standing to seek such a declaration.

"To show standing under Article III of the United States Constitution, a plaintiff must demonstrate (1) injury in fact, (2) causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." *Young Am. Co. v. Affiliated Computer Serv. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005), (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury "must consist of 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Young Am.,* 424 F.3d at 843.

From what the Court can discern from Plaintiff's rambling and frequently disjointed Complaint,

C.      **Subject-Matter Jurisdiction and** *Rooker-Feldman*

The Court now turns to the remaining two causes of action in Plaintiff's Complaint and the remaining three defendants against whom Plaintiff makes these claims.  The remaining defendants, Robert Johnson, Daniel Klint and Synthia O'Grady are residents of Minnesota.  Robert Johnson was, at all relevant times, the Anaoka County Attorney and Daniel Klint's supervisor.  These defendants seek dismissal pursuant to Federal Rule 12(b)(6), or, in the alternative, Rule 56.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Where a complaint fails to set forth a legally cognizable claim the action must be dismissed. *See* Fed.R.Civ.P. 12(b)(6).  When considering a motion to dismiss, the Court must assume that all the facts alleged in the complaint are true and generally construe the complaint in the light most favorable to the plaintiff. *See e.g., Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994).  Any ambiguity concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. *Ossman v. Diana Corp.*, 825 F.Supp. 870, 880 (D.Minn. 1993).  A court, however, need not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990).  To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions. *Springdale Educ. Ass'n v.*

---

Plaintiff appears to be challenging Marathon County's compliance with Title IV-D.  Under established law, Plaintiff has no right to seek such compliance. *See Blessing v. Freestone,* 520 U.S. 329 (1997) (No standing to seek enforcement of general right to effective enforcement of Title IV-4); *(Walters, et al. v. Weiss, et al.*, 392 F.3d 306, 312 (8th Cir. 2004) ("[T]he requirement that a state operate its child support program in 'substantial compliance' with Title IV-D was not intended to benefit individual children and custodial parents, and therefore does not constitute a federal right.").  Because Plaintiff has failed to demonstrate an invasion of a legally protected right under Title IV-D, the dismissal in its entirety of Plaintiff's third cause of action is appropriate.

*Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998).  "A motion to dismiss should be granted as a practical matter ... only in the unusual case in which the plaintiff includes allegations that show in the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).

Under Federal Rule of Civil Procedure 12(b), a motion to dismiss can be treated as one for summary judgment and disposed of according to Rule 56 if the parties are "given reasonable opportunity to present all materials made pertinent to such motion by Rule 56."  In the instant motions, all of the parties, including the plaintiff, submitted matters outside the pleadings for the Court's consideration.  Therefore, in the arguments in which both parties used evidence outside the pleadings in their arguments, the Court views the evidence in the light most favorable to plaintiff to determine whether genuine issues of material fact remain to be resolved.  *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  Otherwise, the Court considers the issues raised by defendants taking all allegations in the complaint as true, as on a motion to dismiss.

However, under the *Rooker-Feldman* doctrine, the lower federal courts do not have subject matter jurisdiction over certain challenges to state-court judgments (with certain exceptions such as habeas corpus petitions).  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also* 28 U.S.C. 1738 (providing state court judgments shall be given full faith and credit in federal courts).  Thus, the standard of review for motions raising *Rooker-Feldman* issues is different from the general standard for motions to dismiss.  Specifically, the Court is "free to weigh evidence and satisfy itself as to the existence of its power to hear the case. *Osborn v. United States*, 918 F.2d 724, 73- (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. &*

14

*Loan, Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)). "In short, no presumption of truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

The *Rooker-Feldman* doctrine limits the subject matter jurisdiction of the court. Under the *Rooker-Feldman* doctrine, "with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Mosby v. Ligon,* 418 F.3d 927, 932 (8th Cir. 2005) (quoting *Ballinger v. Culotta,* 322 F.3d 546, 548 (8th Cir.2003)). "Instead, federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court." *Lemonds v. St. Louis County,* 222 F.3d 488, 492 (8th Cir.2000) (citing 28 U.S.C. § 1257). *See also Feldman,* 460 U.S. at 486. "The *Rooker-Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions." *Lemonds,* 222 F.3d at 492. "If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding ... then the District Court is in essence being called upon to review the state court decision. This the District Court may not do." *Feldman,* 460 U.S. at 482. "Federal claims are inextricably intertwined with the state court judgment if they 'succeed[ ] only to the extent that the state court wrongly decided the issue before it.'" *Prince v. Ark. Bd. of Examiners in Psychology,* 380 F.3d 337, 341 (8th Cir.2004) (alteration in original) (quoting *Lemonds,* 222 F.3d at 492).

Recently, in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 125 S.Ct. 1517 (2005), the Supreme Court explained that the *Rooker-Feldman* doctrine bars federal courts from having cases brought by the losing party in state court proceedings alleging injury caused by state-court judgment

and seeking review and rejection of that judgment. *Id.* at 1526. A claim seeking redress for an injury caused by the state-court decision itself–even if the basis of the claim was not asserted to the state court–asks the federal court to conduct an appellate review of the state-court decision. *Fearing v. City of Lake St. Croix Beach*, No. Civ. 04-5127, slip op. at *4 (D. Minn. March 17, 2006) (quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718-19 (4th Cir. 2006) (discussing *Rooker-Feldman* doctrine after *Exxon Mobile* decision by Supreme Court). "[I]f the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." *Id.* Based upon these principles, the Court concludes that the second cause of action alleged by Plaintiff in the Complaint is an attempt by Mr. O'Grady to accomplish what the *Rooker-Feldman* doctrine deems impermissible.

Although Plaintiff purports to bring this action under 42 U.S.C. § 1983, his claims in the second cause of action are, in reality nothing more than collateral attacks on the validity of orders and determinations rendered on the same issues by the Wisconsin state courts. Specifically, in the second cause of action set forth in the Complaint, Plaintiff alleges the defendants conspired with each other to present a false affidavit and other statements to the Wisconsin courts regarding Plaintiff's summer visitation with his sons, and failed to properly address his allegations of this alleged perjury when he sought to bring a criminal complaint. Plaintiff also alleges in this second cause of action that the defendants illegally prevented him from conducting a review of and raising challenges to the legality of Marathon County's representation of Synthia O'Grady in state proceedings relating to child support and visitation. *See* Complaint at para. 57-65.

The record before the Court indicates these issues have been litigated and adjudicated in the circuit and appellate courts in Wisconsin.  First, in September 2004, Plaintiff filed several notices of "John Doe" criminal complaints in Wisconsin Circuit Court, in which he made multiple allegations of perjury and false statements against Synthia O'Grady, employees of the Marathon County Child Support Agency, and Marathon County attorneys in connection with child support financial matters and the County's participation as a "real party in interest" in the O'Grady's state court proceedings.  (*See* Marathon County, Wisconsin Cases 04JD04).  On March 30, 2005, Wisconsin Circuit Judge Thomas Grover issued a written order dismissing Plaintiff notice of motions, and denying him permission to file the criminal complaints.  In doing so the Court found Mr. O'Grady failed to present facts of any crimes under Wisconsin law, or facts from which the Court could "find reason to believe that a crime has been committed" under Wisconsin law.  (*See* Motion to Dismiss by Defendant Johnson and Defendant Klint, attached Affidavit of Robert D. Goodall at Exhibit F).  Judge Grover concluded that, in light of his findings, additional hearings on the matter were unwarranted, and the case was closed.  *Id.*

Moreover, the Wisconsin Court of Appeals has directly address the issue of Marathon County's representation of Synthia O'Grady in the various child custody and support proceedings and Plaintiff's complaints that he was denied the opportunity to challenge the validity of the County's involvement.  *See O'Grady v. O'Grady*, 701 N.W.2d 653 (Table), 2005 WL 1283560 2005 (Wis. App., June 1, 2005).  In its opinion, the Court of Appeals of Wisconsin determined that under applicable Wisconsin law, the State has the authority to appear as a "real party in interest" in certain actions regarding child support."  *Id.*  The Court rejected O'Grady's challenge to the standing of the Child Support Agency in the proceedings finding

that O'Grady failed to meet his burden of demonstrating that the applicable Wisconsin statutes do not apply in his case.

Although Plaintiff's Complaint is styled as a civil rights action under 42 U.S.C. § 1983, the Court finds that for all practical purposes, the second cause of action is, in reality, an appeal by Plaintiff of the Wisconsin state court judgments relating to his divorce and child support and custody obligations under which he failed to prevail and from which he now complains of injury. Consequently, in order for the Plaintiff to prevail on the second cause of action in this case, this Federal Court would be required to reverse the findings of the Wisconsin state courts by voiding those orders regarding the Plaintiff's lack of sufficient evidence of criminal conduct, and regarding the legality of the Child Support Agency's participation in the child custody and support proceedings and its representation of Synthia O'Grady therein. Such relief is precluded under the *Rooker-Feldman* doctrine. Plaintiff is a losing party in state court proceedings who is alleging injury as a result of the state court judgments and seeking review of the state court judgments in federal court, albeit under his civil rights claim. Plaintiff wants this Federal Court to "undo" the Wisconsin state court judgments. Under the *Rooker-Feldman* doctrine, this Court lacks the subject matter jurisdiction to consider any such claims. *See Exxon*, 125 S.Ct. at 1527.

The Court concludes that Plaintiff's second cause of action, as set forth in the Complaint, is an impermissible attempt to appeal the judgments of the Wisconsin state courts. A plaintiff who has raised and lost claims in state court may not recast those claims under a different federal cause of action and try again. *See Prince*, 380 F.3d at 340 (disallowing state claims recast as § 1983 claim). Such a plaintiff must follow the appellate procedure through the state courts and seek review before the United States Supreme Court. *Id.* Accordingly, the undersigned finds that this Court lacks subject matter jurisdiction over Plaintiff's

second cause of action, and recommends that the claims made therein be dismissed against all defendants without prejudice.

### D.      Dismissal of the Remaining Claim - Plaintiff's First Cause of Action

What remains is Plaintiff's first cause of action. Here, Plaintiff alleges Defendants Synthia O'Grady and Klint violated his constitutional rights by depriving Plaintiff of his right to exercise his parental rights, directing the activities of the Marathon County Child Support Agency to take action against the Plaintiff, and compelling Plaintiff's minor children to illegally conduct search and seizure activities of the Plaintiff's residence under color of law. *See* Complaint at para. 50 - 56. Plaintiff also claims Defendant Klint improperly used his position as an Assistant Anoka County Attorney to influence the Wisconsin child custody and support proceedings, and improperly provided private legal representation to Synthia O'Grady relating to those proceedings. *Id.* In addition, Plaintiff alleges that his complaints to Klint's supervisor, Defendant Johnson, were improperly ignored. Id.

Plaintiff seeks injunctive relief prohibiting Defendants Klint and Synthia O'Grady from conducting searches and seizures of Plaintiff's residence, and a declaration that Defendants' conduct violated Plaintiff's state and federal constitutional rights. Plaintiff also seeks the return of all items illegally seized. Although listed as relief sought under Plaintiff's second cause of action, Plaintiff also seeks injunctive relief prohibiting Defendant Klint from using his official title and the authority of his office, and the resources of the Anoka County, Minnesota, to assist Synthia O'Grady in litigation of child support issues and other Marathon County, Wisconsin cases, as well as an injunction ordering Defendant Johnson to supervise Klint and prevent him from misusing his official title and the authority of his office in support of Synthia O'Grady's

Wisconsin litigation.  Each of the Minnesota defendants seeks dismissal of these claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that conduct of a defendant acting under color of state law deprived a plaintiff of a right, privilege, or immunity secured by the constitution or the laws of the United States."  *Hott v. Hennepin County, Minnesota*, 260 F.3d 901, 905 (8th Cir. 2001).  The color of state law element of the § 1983 action requires that the defendant "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988).  "It is clear that under color of law means under pretense of law.  Thus acts of officers in the ambit of their personal pursuits are plainly excluded."  *Roe*, 128 F.3d at 1216.

### 1.      Claims Against Defendant Synthia O'Grady

Defendant Synthia O'Grady argues Plaintiff's allegations fail to sufficiently allege that she acted under color of state law and must therefore be dismissed.  The Court agrees.  Plaintiff's Complaint contains no allegations that Synthia O'Grady is employed by the state of Minnesota or the state of Wisconsin.  The Complaint does not allege that Synthia O'Grady committed an abuse of a power that she possessed by virtue of her authority under state law.  Instead, all of Plaintiff's allegations relate to Synthia O'Grady's personal pursuits concerning her divorce from the Plaintiff and the resulting issues or child custody and support.  By way of example,  Plaintiff alleges Synthia O'Grady deprived Plaintiff of his parental rights by secretly moving her children from their Wausau, Wisconsin home and placing them with Daniel Klint. *See* Complaint at para.40 and 51.  Plaintiff alleges Synthia O'Grady has engaged in a systematic pattern of psychological and emotional manipulation and conditioning by making false statements to the Plaintiff's sons

against the Plaintiff and recognizing Daniel Klint as their father. *Id.* at para. 54. Plaintiff also alleges Synthia O'Grady, along with Defendant Klint, ordered Plaintiff's oldest son to illegally search Plaintiff's home, video-tape and record items and seize items to bring back to Synthia O'Grady and Klint. *Id.* at 41 & 51.

Plaintiff argues Synthia O'Grady should be found to have acted under color of state law because she received administrative support from the Anoka County Attorney's Office in the preparation of legal documents she filed in the Wisconsin Court proceedings. However, "[p]rivate action is not converted into state actions unless the state, by its law, has compelled the act; mere acquiescence is not enough." *Reinhart v. City of Brookings,* 84 F.3d 1071, 1073 (8th Cir.1996); *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992) (The principal inquiry in determining whether a private party's action constitutes state action under the Fourteenth Amendment is whether the party's actions may be fairly attributable to the state). In the vague and conclusory allegations of the Complaint, the Court finds nothing that suggests Synthia O'Grady's alleged actions were compelled by state law. Even when the Court gives its most liberal reading to Plaintiff's allegations, the Court can only conclude that Plaintiff has misconstrued and misapplied the applicable law, and has failed to sufficiently allege facts that Synthia O'Grady acted under color of state law. Accordingly, the Court recommends the remaining claims alleged against Defendant Synthia O'Grady in Plaintiff's first cause of action be dismissed with prejudice under Rule 12(b)(6).

### 2.    Claims Against Defendant Klint

The Court next turns to the remaining claims alleged against Defendant Klint. Plaintiff names Defendant Klint in both his official and individual capacity. Unlike Synthia O'Grady, Defendant Klint is a public employee, and the Court must, therefore, consider whether Plaintiff has sufficiently alleged that Klint was acting in his capacity as an Assistant Anoka County Attorney when he is alleged to have violated

Plaintiff's constitutional rights.  Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Roe,* F.3d at 1215-1216. As the Eighth Circuit has explained, "[t]he injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible." *Id.* (quoting *Parker v. Boyer,* 93 F.3d 445, 448 (8th Cir.1996)).

Plaintiff argues Klint's use of his Anoka County Attorney office for a telephonic hearing with the Wisconsin court in which Synthia O'Grady was a party and during which Klint spoke constituted actions by Klint that were within Klint's "official capacity" as an Assistant County Attorney.  Plaintiff generally alleges Defendant Klint acted in his official capacity by assisting Synthia O'Grady in the Marathon County cases, and by appearing in person with Synthia O'Grady at hearings held in the Marathon County Courthouse and informing " the Court and Marathon County officials of his official capacity as assistant County Attorney for Anoka County Minnesota."  *See* Complaint at para. 35, 43-46.

The Court concludes Defendant' Klint's use of his County office to participate in a telephonic conference with his wife relating to child custody and support issues arising from her divorce was, at best, conduct on that lies at the outer fringes of his position as Assistant Anoka County Attorney.  The Court declines to classify this single event as rising to the level of "state action."  Defendant's Klint's  use of a government telephone on a single occasion to conduct personal business with his wife was wholly unrelated to his performance of his official duties as an attorney for the County.  As Klint argues, he was not acting as an attorney for Synthia O'Grady in the Marathon County proceedings, and indeed, could not so act as he is not authorized to practice law in the state of Wisconsin.

The Court reaches the same conclusions regarding Plaintiff's allegations that Klint violated his constitutional rights by removing Plaintiff's children from Wisconsin to Klint's residence in Minnesota, and subsequently arranging for a video-taping and search of Plaintiff's home by one of Plaintiff's sons. If Plaintiff's allegations are true, his displeasure with the actions of his ex-wife and her new husband is understandable. However, construing these allegations as true for the purposes of this motion to dismiss, the Court finds no specific allegations in the Complaint of a nexus between Klint's official duties as an Assistant County Attorney and the search and seizure at Plaintiff's residence. The Court finds no allegations supporting a finding that Defendant Klint abused his power as a government official to deprive Mr. O'Grady of his parental rights. Instead, the Complaint describes private actions of a husband and stepfather in the midst of domestic difficulties involving his wife, his stepchildren and their father. Under these circumstances, the Court fails to find sufficient allegations to support a section 1983 claim against Defendant Klint.

In sum, construing all the factual allegations in the Complaint as true, the Court concludes Plaintiff's allegation fail to sufficiently allege that Klint was acting under color of law. Plaintiff's allegations instead support the conclusion that the assistance Defendant Klint provided to Synthia O'Grady was given in his capacity as her husband and as stepfather to her four sons, and not performed in connection with his official capacity as, or under the statutory duties assigned to, an Assistant Anoka County Attorney. The Court recommends the dismissal with prejudice of the remaining claims alleged against Defendant Klint under Rule 12(b)(6).

23

### 3.    Claims Against Defendant Johnson

Plaintiff's allegations against Defendant Johnson stem from complaints Plaintiff made to Johnson, in his capacity as Anoka County Attorney and Defendant Klint's supervisor, that Klint was using his authority as Assistant County Attorney for his personal financial interest and emotional interest by influencing the outcome of Wisconsin court proceedings related to custody and support of Plaintiff's children.  Plaintiff names Defendant Johnson in his individual and official capacity and seeks declaratory and injunctive relief regarding Johnson's alleged failure to protect the Plaintiff against the actions of Synthia O'Grady and Daniel Klint.  Defendant Johnson seeks dismissal of the claims against him arguing Plaintiff has failed to allege the existence of any policy or custom which caused a constitutional violation, and Plaintiff has failed to establish Johnson, as Klint's supervisor, had direct responsibility for the improper conduct alleged in the Complaint.

A suit against a public employee in his official capacity is merely a suit against the governmental entity and must, therefore, allege not only that constitutional rights were violated by the named defendant, but that the violation occurred pursuant to an official policy or custom of the governmental entity.  *Clay v. Conlee,* 815 F.2d 1164, 1170 (8th Cir.1987).  Nowhere in his Complaint does Plaintiff allege the existence of any policy or custom of Anoka County, of its  Attorney's Office, or of the State of Minnesota, which caused any constitutional violation.  Plaintiff has failed to sufficiently state any official capacity claims against Defendant Johnson.

To hold a supervisor individually liable under § 1983, a plaintiff must allege and show that the supervisor personally participated in or had direct responsibility for the alleged violations.  *Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985).  Or, a plaintiff could show that the supervisor actually

knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts. *McDowell,* 990

F.2d 433, 435 (8th Cir. 1993); *Pool v. Missouri Dept. of Corr. & Human Resources,* 883 F.2d 640,

645 (8th Cir.1989).

Plaintiff's Complaint is devoid of any such allegations. The Complaint does not allege that conduct

by Defendant Johnson resulted in the deprivation of Plaintiff's parental rights, or that Johnson was directly

responsible for Defendant Klint's conduct. It does not allege Johnson was involved in the alleged search

and seizure activities at Plaintiff's Wisconsin residence. The Complaint does not allege Johnson had

knowledge of the activities of Klint regarding the Marathon County proceedings, or that he acted with

deliberate indifference or tacitly authorized any of Klint's acts. Instead, Plaintiff's allegations concerning

Defendant Johnson are limited to Plaintiff's assertion that "Johnson had become individually involved when

the Plaintiff filed a letter of complaint followed by telephone calls ... filing a complaint against Daniel Klint"

and that "Johnson declined to respond." The Complaint fails to offer any further allegations that would

support a finding of deliberate indifference or tacit authorization of Defendant Klint's conduct by Defendant

Johnson. Plaintiff provides no allegations that connect Johnson's alleged failure to respond to the complaint

with the deprivations he alleges he suffered as a result of Defendant Klint's actions.

The Court finds Plaintiff has failed to sufficiently allege facts upon which relief can be granted

pursuant to 42. U.S.C. § 1983 against Defendant Johnson in his official or individual capacity. Therefore,

the Court recommends these claims be dismissed with prejudice.

### E.        Plaintiff's Motion for Preliminary Injunction

Mr. O'Grady has filed a motion for the issuance of an injunction and restraining order that

prohibits the Secretary, United States Department of Health and Human Service, Director, Office

of Child Support Enforcement, from providing or making available 'any' funds or grants pursuant to title IV-D of the social security Act, to the State of Wisconsin and/or the state of Minnesota, or in the alternative to Ramsey, Anoka County Minnesota, and Marathon County Wisconsin."

Plaintiff contends this injunctive relief is necessary because the defendants in the instant actions, as well as a separate RICO action Plaintiff also filed in this Court,[2] continue engage in illegal conduct that is contrary to Wisconsin's state/county contract, which requires compliance with Title IV-D.

A court may deny a motion for a preliminary injunction without a hearing, after taking all reasonable inferences from the submissions that favor the moving party, when the motion fails as a matter of law. *Cf. United Healthcare Ins. Co. v. AdvancePCS,* 316 F.3d 737, 745 (8th Cir.2002). The undersigned has made such a determination here, and, for the reasons set forth below, recommends that Plaintiff's request for injunctive relief be denied.

To determine whether a preliminary injunction is appropriate, a court must consider (1) the threat of irreparable harm to the moving party; (2) the possibility that the moving party will succeed on the merits of the case; (3) the balance between the harm suffered by the moving party and the burdens imposed on the nonmoving party; and (4) the public interest. *See Emerson Elec. Co. v. Rogers,* 418 F.3d 841, 844 (8th Cir.2005). The burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. *See Baker v. Electric Co-op, Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994).

---

[2] *O'Grady v. Marathon County Child Support Agency, et al,* 05-cv-2418 (JNE/JJG) was dismissed for lack of subject matter jurisdiction by United States District Judge Joan n. Ericksen in an Order dated June 19, 2006.  Mr. O'Grady has filed an appeal of this Order with the Eighth Circuit Court of Appeals.

First, as discussed by the Court in Footnote 1 of this Report and Recommendation, Plaintiff has no standing to seek enforcement of a general right to effective enforcement of Title IV-4. *See Blessing v. Freestone,* 520 U.S. 329 (1997). No such individual federal right exists. *Walters, et al. v. Weiss, et al.,* 392 F.3d 306, 312 (8th Cir. 2004) ("[T]he requirement that a state operate its child support program in 'substantial compliance' with Title IV-D was not intended to benefit individual children and custodial parents, and therefore does not constitute a federal right."). In addition, the Court notes the sum and substance of this Report and Recommendation is the dismissal of Plaintiff's Complaint in its entirety. Thus, there can be no finding of any likelihood of success on the merits by the Plaintiff in the instant case. "Likelihood of success on the merits is often the most significant of the four factors considered by courts in determining whether to issue a temporary restraining order." *Shrink Missouri Gov't PAC v. Adams,* 151 F.3d 763, 764 (8th Cir.1998). Plaintiff motion should be denied.

## IV.   CONCLUSION

Having considered the arguments and briefs submitted by the parties, the proceedings, the record and the entire file in this matter, **IT IS HEREBY RECOMMENDED** that:

(1)     Motion to Dismiss by Defendants Finley and Corbett (Doc. No. 4) be **GRANTED** for lack of personal jurisdiction as set forth in the substance of this Report and Recommendation, and the Plaintiff's Complaint against them be **DISMISSED WITHOUT PREJUDICE**;

(2)     Motion to Strike by Defendants Finley and Corbett (Doc. No. 51) be **DENIED AS MOOT** in light of this Court's lack of personal jurisdiction over these defendants.

(3)     Motion to Dismiss by Defendant McBain (Doc. No. 60) be **GRANTED** for lack of

27

personal jurisdiction as set forth in the substance of this Report and Recommendation, and the Plaintiff's Complaint against him be **DISMISSED WITHOUT PREJUDICE**;

(4)   Motion to Dismiss or in the Alternative for Summary Judgment by Defendants Johnson and Klint (Doc. No. 20) be **GRANTED** for the reasons set forth in this Report and Recommendation, and Plaintiff's Complaint against them be **DISMISSED WITHOUT PREJUDICE**, with the exception of Plaintiff's first cause of action, which should be **DISMISSED WITH PREJUDICE**;

(5)   Motion to Dismiss or in the Alternative for Summary Judgment by Defendant Synthia O'Grady (Doc. No. 67) be **GRANTED** for the reasons set forth in this Report and Recommendation, and Plaintiff's Complaint against her be **DISMISSED WITHOUT PREJUDICE**, with the exception of Plaintiff's first cause of action, which should be **DISMISSED WITH PREJUDICE**;

(6)   Plaintiff's Motion for Default Judgment Against Defendants Synthia O'Grady and McBain (Doc. No. 12) be **DENIED** for the reasons set forth in the substance of this Report and Recommendation; and

(7)   Plaintiff's Motion for Preliminary Injunction (Doc. No. 80) be **DENIED** for the reasons set forth in the substance of this Report and Recommendation.

Dated: July 19, 2006                                    s/Jeanne J. Graham

                                                   _____
                                                   JEANNE J. GRAHAM
                                                   United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by August 7, 2006.  A party may respond to the objections within ten

days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.